## SANGER BROS. v. BARRETT.    (No. 1646.)

(Court of Civil Appeals of Texas.    Amarillo.
April 7, 1920.    Rehearing Denied
May 19, 1920.)

1. Fraud ⊜⇒59(1)—Measure of damages value of goods obtained.

In an action against one obtaining goods by false pretenses, by fraudulent statements as to his financial status, measure of damages is ordinarily the value of the goods obtained, with 6 per cent. interest.

2. Bankruptcy ⊜⇒363, 423(1)—Waiver of tort on filing claim in bankruptcy no bar to action for deceit after discharge.

Discharge, by buyer's bankruptcy, of his contract indebtedness for goods whose sale was procured by his fraud, does not discharge his liability for the deceit, and, although the seller could waive the tort and file a claim in bankruptcy based on the contract, yet he could also bring a subsequent action in deceit.

3. Pleading ⊜⇒162—Office of supplemental petition.

The office of a supplemental petition is not to set up a cause of action, but simply to reply to the pleadings of the adversary.

4. Judgment ⊜⇒250—No recovery for tort under prayer for recovery on contract.

A suit on contract will not authorize a recovery for a tort, and a judgment for a tort will be set aside where the pleadings only seek recovery on a contract.

5. Bankruptcy ⊜⇒423(1)—Only fraud in fact exempt from discharge.

The fraud referred to in Bankruptcy Act, § 17, as amended by Acts Feb. 5, 1903, § 5, and March 2, 1917 (U. S. Comp. St. § 9601), releasing a bankrupt from all his ·provable debts except liabilities for obtaining property by false pretenses or false representations, means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.

Appeal from Dallas County Court; T. A. Works, Judge.

Suit by Sanger Bros. against S. F. Barrett. Judgment for defendant, and plaintiff appeals. Affirmed.

W. T. Henderson and House & Wilson, all of Dallas, for appellant.

Dupree & Crenshaw, of Hillsboro, for appellee.

HUFF, C. J. The appellant, Sanger Bros., sued Barrett for a balance due on a note for $27.80, and upon an open account for $592.19, for merchandise, and alleging that by an instrument in writing the appellee agreed to pay 10 per cent. interest on the open account, and 10 per cent. attorney's fees in case of legal proceedings.    The appellee answered

that he had been declared a bankrupt, and that in such proceeding the appellant filed its claim, amounting to $1,836.75, consisting ·in part of the indebtedness here sued upon, and that appellee, on June 26, 1918, was given a full discharge from the note and account sued on.    It was alleged that appellant participated in the distribution of the proceeds of the bankrupt estate, and received on such claim the sum of $1,209.17.    The appellant filed a supplemental petition, admitting that appellee was discharged as alleged, and that they filed their claim in bankruptcy, and received dividends therefrom, as alleged by appellee, but that the debt was not discharged because the debt was for goods, etc., obtained from appellant by false pretenses, in that he made a statement in writing purporting to show his financial condition, wherein he stated his total liabilities at $10,800, when in fact at that time his total liabilities were $20,899.68, and that as shown by his statement his assets were $21,200; that the statement as to his liabilities was false and fraudulently made for the purpose of inducing the sale of goods on credit; and that appellant, relying upon the same, sold and· delivered the goods. It is also alleged that he made another statement on March 1, 1917, showing his liability to be $5,559.38, when as a matter of fact his liabilities were $15,599.06, and showing his net worth to be $32,924.62; alleging .also that this statement was false and fraudulent, and relied upon by the appellant, and upon which the goods were furnished and credit extended to the appellee.    The prayer in the supplemental petition is that appellant pray, as in its original petition, for judgment in the amount of its debt, principal, interest, and attorney's fees.    The appellee replied to this supplemental petition by a supplemental answer, denying any fraudulent intent or bad motive, and alleged that it was the custom of merchants to give only the assets and liabilities of their business, as distinguished from their personal assets and liabilities of merchandise, etc.; that the assets and liabilities not reported were his homestead and the indebtedness thereon.

The case was tried without a jury, and the trial court filed conclusions of fact as follows:

"First. That on December 12, 1917, defendant was·indebted to plaintiff on two promissory notes, one for the sum of $569.38, and one for the sum of $600, and was further indebted to plaintiff on an open account in the sum of $592.19; that all of said indebtedness was for goods, wares, and merchandise sold and delivered to defendant by plaintiffs; that the notes bear interest at the rate of 8 per cent. per annum from March 2, 1917, and the open account bears interest at the rate of. 10 per cent. per annum from the date of the respective invoices, and both notes and open account provided for 10 per cent. attorney's fees.

"Second. That on December 12, 1917, defendant filed in the United States District Court

for the Western District of Texas, at Waco, his voluntary petition in bankruptcy, in due and legal form, and filed in connection therewith a list of his creditors, in which it was shown an indebtedness to the plaintiffs herein on notes and open account in the sum of $1,958.65.

"Third. That defendant was duly adjudged a bankrupt on December 13, 1917, and notices of the filing of his petition and said adjudication were sent to the plaintiffs herein.

"Fourth. That on December 21, 1917, plaintiffs filed in said bankruptcy court their claim against the defendant, in the sum of $1,836.76, based upon the notes and open account herein sued upon, which claim was approved, and plaintiff thereafter received and accepted dividends from said bankruptcy estate in the total sum of $1,184.72, and applied the same as a credit upon the two notes above mentioned, paying the notes for $569.38 in full, leaving a balance of $27.80 due upon the principal of the $600 note, and leaving the open account of $592.19 unpaid.

"Fifth. That on June 26, 1918, defendant was given a full and complete discharge in bankruptcy. Thereafter, on July 12, 1918, plaintiffs instituted this suit against him in this court.

"Sixth. That prior to the time of the incurring of the various items of indebtedness included in the notes and open account, defendant made to plaintiff on June 7, 1916, a statement purporting to show the assets and liabilities of the defendant showing total liabilities of $10,800.00 and that on March 1st, 1917, defendant made the plaintiffs a similar statement, showing total liabilities of $5,569.38; that said statements were given for the purpose of obtaining credit, were relied on by plaintiffs and induced plaintiffs to extend credit to the defendant.

"Seventh. That said statements did not show all of the defendant's liabilities as of the respective dates on which they were given, in that the same failed to show an indebtedness owing by defendant on certain vendor's lien notes representing a part of the purchase price of one hundred and twenty-six acres of land, located about four and one half miles from the town of Malone, in Hill county, Texas, in the total sum of $10,099.68, said land being owned, used and occupied by the defendant as his homestead. The said indebtedness was listed in defendant's schedules in bankruptcy, and had been so recorded in the deed records of Hill county, Texas, since January 3, 1914.

"Eighth. That the listing of the one hundred and twenty-six acres of land as an asset of defendant on the statement of March 1, 1917, was without the knowledge or consent of defendant.

"Ninth. That it was the custom among merchants in the county where defendant's business was located, in making statements of the character above mentioned, to give only the debts and liabilities of the business conducted by them as distinguished from the personal or individual indebtedness of the person giving the statement, and that the defendant in giving said statements to plaintiffs in good faith believed that all that was required of him in giving said statements was a statement of the debts and liabilities of his business, and

that there was no intention upon the part of defendant to withhold or conceal from the plaintiff any material fact relative to his financial condition or the condition of his business, nor was there any fraudulent purpose upon the part of defendant in failing to include the indebtedness upon his homestead in said statements."

This case, we believe, may properly be treated under the twelfth and thirteenth assignments without discussing the other assignments, which principally relate to exceptions overruled by the trial court to the answer and pleadings of the appellee and to the admission of certain testimony. The assignments considered are to the effect that the trial court's conclusions of law that the claim in bankruptcy upon the notes and open account constituted a waiver of appellee's right to claim the goods for which the indebtedness had been incurred was obtained by false pretenses; that the statements made were not made with a fraudulent intent required to bring the debt herein sued upon within the exceptions of the Bankrupt Act (U. S. Comp. St. §§ 9585–9656). In addition to the conclusions of law complained of in the assignments, the trial court concluded that the debt sued upon is one provable in bankruptcy, and is not within any of the classes which exempt from the operation of the discharge, and that the discharge is a bar to any recovery herein by the plaintiff.

[1-4] The appellants in this case sue to recover a balance due on a note and upon an open account for merchandise sold. Such indebtedness was provable as claims under section 63 of the Bankrupt Act (U. S. Compiled Statutes 1916, § 9647). The action brought by the appellant herein is not an action on deceit in obtaining goods under false pretenses and misrepresentation and for consequent damages. The allegations show the execution of the notes and their payment, except a small balance, and an account with the contract to pay interest at the rate of 10 per cent. and attorney's fees thereon in case of suit. If this had been an action sounding in tort for damages, the measure of the damages would be ordinarily the value of the goods so obtained, with 6 per cent. interest. Appellant sues for the contract price, a contract rate of interest, and attorney's fees, which are in the nature of a penalty provided for by the contract. This contract indebtedness was provable in the bankruptcy proceedings, and in which appellants participated and received their pro rata share therefrom. The judgment of discharge, therefore, barred the contract indebtedness. Appellants seem to think they may recover the balance of this debt under section 17 of the act, subdivision 2 (U. S. Compiled Statutes, § 9601, as amended in 1903 and 1917). A discharge in bankruptcy releases a bankrupt from all his provable debts, except such as "are liabilities for obtaining property by false pretenses or false

representations." "Liabilities," created by a false pretense and false representation, are not provable, and such liabilities rest in tort and not upon contract. The appellants had the right to waive the tort and rely upon the contract. This they did in the bankruptcy court, thereby rendering the claim based on the contract provable, which contract was discharged in that court. The "liability" arising for deceit, however, was not, and appellants still had their action for deceit, which was not provable, and could not, under the act, be discharged, unless fully satisfied. But appellants did not see proper to base their cause of action upon deceit, but upon contract. The case of Talcott v. Friend, 179 Fed. 676, 103 C. C. A. 80, 43 L. R. A. (N. S.) 649, decided by the Circuit Court of Appeals for the Seventh Circuit, held substantially that an action for deceit is not based on a rescission of the contract, but implies an affirmance; and the proving of a claim in bankruptcy for the goods sold, and delivered on a contract and receiving of dividends thereon, is no bar to a subsequent action by the creditor for deceit, based on fraudulent representations inducing the sale. The above case was carried to the Supreme Court. Friend v. Talcott, 228 U. S. 27, 33 Sup. Ct. 505, 57 L. Ed. 718. That court approved the holdings of the Circuit Court, ruling substantially that in accepting the dividends this would not waive the right to sue on the tort, nor was it res adjudicata as to such action. The case of Bunting, etc., v. Alexander, 190 S. W. 1152, substantially follows the rule above announced. After a review of several cases by the Supreme Court of the United States, the Supreme Court of Georgia said:

"The plaintiff's judgment is founded on contract. Where, instead of enforcing the liability based on fraud, the creditor still insists on enforcing a judgment on the contract as to after-acquired property, the debtor's discharge in bankruptcy is effective." Ford v. Blackshear Mfg. Co., 140 Ga. 670, 79 S. E. 576.

The appellants in this case rely on the cases of Katzenstein v. Reid-Murdock Co., 41 Tex. Civ. App. 106, 91 S. W. 360, and Ehlinger v. Speckels, 189 S. W. 348. As we understand these cases, they do not hold to the contrary. It will be perceived in the first case that the creditor therein disaffirmed the contract on account of the fraud, and sought to recover the goods in the federal court on account of deceit in obtaining the goods, and that that court rendered such a decree, but only a portion of the goods were found, and the suit then pending was for the value of the goods not found. That suit was therefore for damages for deceit, which was not a provable claim, and hence not barred. The second case appears to be based on deceit in obtaining money under false pretense, and was not, as we construe the case, strictly on the contract. While the note executed for the amount so obtained is set out, it was only a part of the

221 S.W.—69

transaction and given as a result of the fraud. The allegations therein would support an action on the tort. We have concluded, if the appellants desired to defeat the bar, they should have sued in tort and not on the contract. In this case the appellants sought to avoid the bar by alleging, in a supplemental petition, that the notes and account were for goods obtained by a false pretense and upon fraudulent representations; but they do not, in that instrument, seek any recovery upon the deceit and fraud or for damages occasioned thereby, but still ask for judgment on the contract, as set out in their original petition. The office of a supplemental petition is not to set up the cause of action but simply to reply to the pleadings of the adversary. In this case the fraud did not necessarily defeat the contract induced thereby. The creditor could waive the tort, and rely upon the contract, as rendering a claim provable; but such does not necessarily waive the right to sue in tort. A suit on contract will not authorize a recovery for a tort, and a judgment for the tort would be set aside where the pleadings, as in this case, only seek a recovery on the contract. Railway Co. v. Hennegan, 33 Tex. Civ. App. 314, 76 S. W. 452; Railway Co. v. Amarillo Street Ry., 171 S. W. 1103. It is our view the trial court correctly held that the debt sued on was provable in bankruptcy, and that the discharge was a bar for the recovery upon the contract debt.

[5] It is urged that the trial court erred in holding there was no intentional fraud. Appellant cites a great many cases which are in effect on constructive fraud, and not fraud in fact. It may be the trial court would have been justified in finding fraud in fact on the part of appellee in making the statements, but we are not prepared to say there is no evidence supporting the court's conclusions.

"Such association justifies, if it does not imperatively require, the conclusion that the 'fraud' referred to in that section [33] means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality. Such a construction of the statute is consonant with equity, and consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency. A different construction would be inconsistent with the liberal spirit which prevades the entire bankrupt system." Neal v. Clark, 95 U. S. 704, 24 L. Ed. 586; Hennequin v. Clews, 111 U. S. 676, 4 Sup. Ct. 576, 28 L. Ed. 565.

It was said again that the kind of fraud which was intended to exempt from a discharge was positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and this statement was made with reference to false and fraudulent representations of fact, etc. Strange v. Bradner, 114 U. S. 555, 5 Sup. Ct. 1038, 29 L. Ed. 248;

'In re Goldberg (D. C.) 256 Fed. 541; Cooper Grocery Co. v. Gaddy, 141 S. W. 825.

The judgment of the trial court will be affirmed.